NO. 24-6996

# United States Court of Appeals

## *for the*

# Fourth Circuit

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

– v. –

MARCUS ROOSEVELT TAYLOR,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND AT BALTIMORE IN NO. 1:17-CR-00106-GLR-6

---

## REPLY BRIEF OF APPELLANT

---

BRENT EVAN NEWTON
ATTORNEY AT LAW
*Attorney for Defendant-Appellant*
19 Treworthy Road
Gaithersburg, Maryland 20878
(202) 975-9105

 COUNSEL PRESS    (800) 4-APPEAL • [812594]

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF THE REPLY ISSUES ............................................... 1

ARGUMENT ................................................................................. 1

REPLY ISSUE ONE: Appellant's trial counsel and his direct appeal counsel provided ineffective assistance by failing to raise the insufficient-evidence issues included in appellant's § 2255 motion ............. 1

    A.   Appellant's Claim that His Trial Counsel Provided Ineffective Assistance ................................................. 2

    B.   Appellant's Claim of Ineffective Assistance of Direct Appeal Counsel ................................................................... 3

REPLY ISSUE TWO: The evidence supporting appellant's three convictions is insufficient ................................................... 4

    A.   Appellant's Insufficient-Evidence Claims Were Properly Raised in His § 2255 Proceeding ................................ 4

    B.   The Evidence Supporting Each of Appellant's Convictions Is Insufficient ................................................................ 6

        1.   Count One ................................................... 6

        2.   Count Two................................................... 13

        3.   Count Three................................................. 19

REPLY ISSUE THREE: If this Court determines that there is sufficient evidence supporting any of appellant's convictions, the errors related to other convictions are not harmless ...................... 19

REPLY ISSUE FOUR: The district court erred by failing to conduct an evidentiary hearing on appellant's ineffective-assistance claims............. 20

REPLY ISSUE FIVE: The district court erred by failing to conduct an evidentiary hearing on appellant's perjury claim ...................... 23

CONCLUSION ............................................................................. 29

CERTIFICATE OF COMPLIANCE .................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
   217 F.3d 225 (4th Cir. 2000) ........................................................................14

*Bousley v. United States*,
   523 U.S. 614 (1998)................................................................................5, 23

*CCA Recordings 2255 Litigation v. United States*,
   Case No. 19-cv-2491-JAR-JPO *et al.*, 2021 WL 150990
   (D. Ka. Jan. 18, 2021)........................................................................23

*Cochran v. Norkunas*,
   919 A.2d 700 (Md. 2007) ...................................................................... 12, 13

*Daniels v. United States*,
   5:10-CR-327-2H, 2016 WL 3570623 (E.D.N.C. June 27, 2016) ................23

*Glossip v. Oklahoma*,
   145 S. Ct. 612 (2025)...................................................................... 25, 27, 28

*Hendricks v. Vasquez*,
   974 F.2d 1099 (9th Cir. 1992) ................................................................21

*Johnson v. State*,
   262 A.2d 792 (Md. App. 1970) ...............................................................9, 10

*Kawashima v. Holder*,
   565 U.S. 478 (2012)................................................................................17

*Kyles v. Whitley*,
   514 U.S. 419 (1995).......................................................................... 27, 28

*Lopez v. Greiner*,
   323 F. Supp. 2d 456 (S.D.N.Y. 2004) ........................................................22

*McNally v. United States*,
   483 U.S. 350 (1987)................................................................................18

*Murray v. Carrier*,
   477 U.S. 478 (1986)..................................................................................4

*Napue v. Illinois*,
   360 U.S. 264 (1959)................................................................................24

*Overton v. MaCauley*,
    822 Fed. App'x 341 (6th Cir. 2020) ............................................................5

*Scheidler v. Nat'l Org. for Women*,
    537 U.S. 393 (2003)..................................................................... 16, 17

*Shular v. United States*,
    589 U.S. 154 (2020).................................................................................17

*Smith v. Robbins*,
    528 U.S. 259 (2000)..................................................................................3

*Stirone v. United States*,
    361 U.S. 212 (1960)..................................................................................7

*Strickland v. Washington*,
    466 U.S. 668 (1984)..................................................................... 20, 22, 23

*United States v. Charles*,
    932 F.3d 153 (4th Cir. 2019) ...................................................................20

*United States v. Dominguez*,
    998 F.3d 1094 (10th Cir. 2021) ...............................................................22

*United States v. Fell*,
    No. 2:01-cr-12, 2013 WL 1953322 (D. Vt. May 10, 2013) ........................24

*United States v. Franklin*,
    904 F.3d 793 (9th Cir. 2018) ...................................................................17

*United States v. Gattis*,
    877 F.3d 150 (4th Cir. 2017) ...................................................................17

*United States v. Green*,
    996 F.3d 176 (4th Cir. 2021) ...................................................................14

*United States v. Hashimi*,
    110 F.4th 621 (4th Cir. 2024) ..................................................................25

*United States v. Ivezaj*,
    568 F.3d 88 (2d Cir. 2009) ........................................................................3

*United States v. Metzger*,
    3 F.3d 756 (4th Cir. 1993) .......................................................................16

*United States v. Miles*,
    75 F.4th 1213 (11th Cir. 2023) ................................................................17

*United States v. O'Keefe*,
   128 F.3d 885 (5th Cir. 1997) ..........................................................24

*United States v. Ross*,
   447 Fed. App'x 493 (4th Cir. 2011) ...............................................3

*United States v. Sheneman*,
   Nos. 3:10-CR-120, 2015 WL 2250247 (N.D. Ind. May 12, 2015) ..............24

*United States v. Simmons*,
   11 F.4th 239 (4th Cir. 2021) .........................................................16

*United States v. Taylor*,
   942 F.3d 205 (4th Cir. 2019) ............................................. 4, 10, 13

*United States v. Teague*,
   956 F.2d 1427 (7th Cir. 1992) ........................................................6

*United States v. Witherspoon*,
   231 F.3d 923 (4th Cir. 2000) ........................................................24

*Yee v. City of Escondido, Cal.*,
   503 U.S. 519 (1992)......................................................................14

**Statutes & Other Authorities:**

18 U.S.C. § 922(g)(1)....................................................................3

18 U.S.C. § 924(e)(2)(A)(ii) ........................................................17

18 U.S.C. § 1961(1) ............................................................ *passim*

Federal Rule of Criminal Procedure 12(b)(3)................................. 15, 16

Federal Rule of Criminal Procedure 29 ...........................................3

Federal Rule of Criminal Procedure 29(a)........................................2

Federal Rule of Criminal Procedure 29(c).......................................2, 5

## STATEMENT OF THE REPLY ISSUES

1. Whether appellant's trial counsel and his direct appeal counsel provided ineffective assistance by failing to raise the insufficient-evidence issues included in appellant's § 2255 motion.

2. Whether the evidence supporting appellant's three convictions is insufficient.

3. Whether, if this Court determines that there is sufficient evidence supporting any of appellant's convictions, the errors related to other convictions are harmless.

4. Whether the district court erred by failing to conduct an evidentiary hearing on appellant's ineffective-assistance claims.

5. Whether the district court erred by failing to conduct an evidentiary hearing on appellant's perjury claim.

## ARGUMENT

**REPLY ISSUE ONE: Appellant's trial counsel and his direct appeal counsel provided ineffective assistance by failing to raise the insufficient-evidence issues included in appellant's § 2255 motion**.

Appellant's opening brief contended that both his trial counsel and his direct appeal counsel provided ineffective assistance by failing to raise the insufficient-evidence issues included in appellant's § 2255 motion. Opening Brief for Appellant, at 13, 37. Appellee disputes both ineffective-assistance claims, but its arguments lacks merit.

1

## A. Appellant's Claim that His Trial Counsel Provided Ineffective Assistance

Appellee argues that trial counsel were not ineffective by failing to file a post-trial motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c) because (1) the insufficient-evidence claims concerning Counts One and Three lack merit (and there is no reason to believe the district judge would have granted such a motion after denying trial counsel's prior, general Rule 29(a) motions during trial);[1] and (2) the claim concerning Count Two was not cognizable in a motion filed under Rule 29(c) to the extent that it challenges the alleged attempted robberies under Maryland law as racketeering acts. Response Brief of Appellee, at 32-35. Appellee errs. Regarding the former issue, for the reasons discussed *infra*, the insufficient-claims are meritorious.

Regarding the latter issue, the portion of appellant's claim concerning Count Two – which contends that attempted robbery under Maryland law is not a "racketeering act" under 18 U.S.C. § 1961(1) – would have been cognizable in a Rule 29(c) motion. Despite being a "legal" argument, it challenges the legal sufficiency of the prosecution's evidence concerning an element of a charged

---

[1] Appellee's argument that appellant cannot show a reasonable probability that the specific district judge who presided over trial would have granted a Rule 29(c) motion ignores the Supreme Court's holding that the "prejudice" component of the ineffective-assistance standard is objective in nature. *See* Opening Brief of Appellant, at 38-39 & n.21.

offense and, thus, is properly raised under Rule 29. *See, e.g.*, *United States v. Ivezaj*, 568 F.3d 88, 91-92 & n.2 (2d Cir. 2009) (assessing, under Rule 29, whether a particular state offense alleged to be a predicate act qualified as a "racketeering act" under 18 U.S.C. § 1961(1)); *cf. United States v. Ross*, 447 Fed. App'x 493, 493-94 (4th Cir. 2011) (holding that the district court erred by denying the defendant's Rule 29 motion because the defendant's prior convictions did not qualify as "felonies" under 18 U.S.C. § 922(g)(1)).

### B. Appellant's Claim of Ineffective Assistance of Direct Appeal Counsel

Appellee erroneously contends that appellant's claim concerning his direct appeal counsel is "waived" because appellant's opening brief "d[id] not develop" the assertion that the omitted insufficient-evidence issues are "clearly stronger"[2] than the issues actually raised on direct appeal. Response Brief of Appellee, at 12. Appellant's opening brief contended that:

> As discussed below, the legal landscape at the time of appellant's initial direct appeal fully supported each of the meritorious insufficient-evidence arguments discussed in Issue One, *supra*. As he contended in the court below, JA2762-2773, appellant's direct appeal counsel performed deficiently by failing to raise those much stronger issues instead of the clearly meritless issues rejected by this Court on the initial direct appeal.

---

[2] *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Opening Brief of Appellant, at 14. Footnote 5 of the opening brief set forth the issues raised on direct appeal. *Id.* at 14-15 n.5. The brief then extensively (at pp. 15-37) discusses why the omitted issues are *meritorious* – unlike the issues rejected as *meritless* by this Court on direct review in *United States v. Taylor*, 942 F.3d 205 (4th Cir. 2019). Appellant's opening brief sufficiently developed the argument about why the omitted issues are "clearly stronger" than the ones actually raised.

Alternatively, appellee argues that appellant has not shown "prejudice" on his ineffective-assistance claim and, thus, cannot avoid the procedural bar resulting from the omission of the insufficient-evidence claims on direct appeal. Response Brief of Appellee, at 12. Appellee is incorrect because, as explained *infra*, the insufficient-evidence claims are meritorious and, therefore, appellant was prejudiced.

**REPLY ISSUE TWO: The evidence supporting appellant's three convictions is insufficient.**

### A. Appellant's Insufficient-Evidence Claims Were Properly Raised in His § 2255 Proceeding.

Appellee contends that appellant's insufficient-evidence issues raised in his § 2255 motion are procedurally defaulted because appellant did not raise them on direct appeal. However, those issues were properly raised in his § 2255 motion in view of the ineffective assistance by his direct appeal counsel. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In any event, the insufficient-evidence issues are properly

raised as the gravamen of his ineffective-assistance claim based on his trial counsel's failure to file a Rule 29(c) motion.

In addition, because appellant's insufficient-evidence claims establish his actual innocence of the charged offenses,[3] those claims are not subject to a procedural bar. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Appellee's argument that appellant's opening brief "abandoned" reliance on the actual-innocence exception (which he raised in the court below),[4] *see* Response Brief of Appellee, at 11, is wrong. Appellant properly raises the alternative "actual innocence" exception in this reply brief in response to appellee's procedural default argument made in its brief. *Overton v. MaCauley*, 822 Fed. App'x 341, 346 (6th Cir. 2020) ("Procedural default is an affirmative defense that the government must raise. . . . And appellants need not anticipate affirmative defenses in their opening

---

[3] As appellant contended in the court below:

> [T]here is not merely "insufficient evidence" of the charges in Counts One, Two, and Three of the superseding indictment. Mr. Taylor is actually innocent of those charges within the meaning of the Supreme Court's definition of "actual innocence." . . . Clearly, if this Court agrees with the above legal analysis concerning the insufficient evidence of the charges in Counts One through Three, then the evidence of the three convictions is not merely insufficient. Instead, Mr. Taylor is actually innocent of the charged RICO and Hobbs Act offenses.

JA2753-54.

[4] JA2753-54. The government responded to the "actual innocence" exception in the court below. JA2899-2901.

briefs to avoid forfeiture."); *see also United States v. Teague*, 956 F.2d 1427, 1433 (7th Cir. 1992) ("The government raised this waiver issue in its appellate brief, but Teague rather than arguing in his reply brief that his conviction of conspiracy 'demonstrates a manifest miscarriage of justice,' chose to 'rely upon the arguments set forth in his initial brief.' Thus, the defendant-appellant has waived any argument that the conviction . . . constitutes a manifest miscarriage of justice . . . .").

**B. The Evidence Supporting Each of Appellant's Convictions Is Insufficient.**

**1. Count One**

Appellee contends there is sufficient evidence that appellant conspired with at least one other police officer to engage in a racketeering enterprise and that appellant or another officer in the RICO conspiracy "agreed [with another coconspirator] to commit" Racketeering Act Eight. Response Brief of Appellee, at 13. Appellee specifically contends the evidence does not have to show that anyone in the conspiracy actually *committed* that racketeering act – only that there was a conspiracy to commit it. *Id.* at 13. Appellee thus states that it does not matter even if the evidence fails to show that Stevenson was not actually robbed under Maryland law because the co-conspirators only needed to "agree to pursue" a robbery of Stevenson, Brown, or Holloway. *Id.* at 14-22.

In a footnote, appellee recognizes that the jury's verdict form referred to the Racketeering Act Eight as "March 22, 2016, Oreese Stevenson" but contends that that the parenthetical was merely a "mnemonic device" that did not alter the charges in Count One (which, according to appellee, did not limit the jury's consideration to Oreese Stevenson as the actual or intended robbery victim).  Response Brief of Appellee, at 14 n.2.  Appellee further argues that, even if there is insufficient evidence that officers conspired to rob Stevenson, the jury's finding of Racketeering Act Eight can be affirmed based on evidence that the officers conspired to rob Brown (during the traffic stop) or Holloway (at Stevenson's home).  *Id.* at 15-22.

Appellee is wrong by failing to account for the specific allegations in the superseding indictment – that focus on Stevenson as the intended robbery victim – thereby constraining this Court's analysis of whether there was sufficient evidence of Racketeering Act Eight found as part of the jury's verdict on Count One.  *See Stirone v. United States*, 361 U.S. 212, 215-16 (1960).  Appellant's argument remains the same regardless whether the prosecution had to prove that a *completed robbery of Stevenson occurred* or, instead, merely that at least two members of the conspiracy *agreed to rob Stevenson*.  Either way, as matter of Maryland law, the evidence at trial failed to prove that Stevenson could have been the victim of an actual or intended robbery, as specifically charged in the superseding indictment and as permitted by the jury's verdict form.

7

The superseding indictment and the jury's verdict form explicitly limited the jury's consideration of Racketeering Act Eight to Stevenson (and no other alleged victim). In pertinent part, Racketeering Act Eight in Count One alleges:

**March 22, 2016, Robbery/Extortion *of O.S.***

27.  On or about March 22, 2016, Sergeant JENKINS and Detectives TAYLOR, E.H., and M.W., acting in their capacity as police officers, conducted a traffic stop and arrested O.S. The defendants seized suspected narcotics ***and $21,500 from O.S***. JENKINS only submitted $15,000 of the ***$21,500 that was taken from O.S***. and kept the rest for himself. …

29.  Following the arrest of O.S., JENKINS, TAYLOR, E.H., and M.W. entered O.S.'s residence. JENKINS, TAYLOR, E.H. and M.W. stole money, including ***approximately $200,000 from a safe*** they opened and from two bags they seized, and property, including a Breitling men's wristwatch valued at $4,000 from the location.

30.  After JENKINS had emptied the safe he put $100,000 back into it and had the other members of the GTTF create a video, on TAYLOR's cellular telephone, that purported to show them opening the safe and finding the money.

31.  After the search, JENKINS, TAYLOR, E.H. and M.W. went to TAYLOR's house. In TAYLOR's basement, JENKINS gave TAYLOR, E.H and M.W., ***at least $20,000 each from the money that had been stolen from O.S.*** JENKINS kept the rest of the money for himself.

32.  To conceal their illegal conduct, JENKINS, TAYLOR, E.H. and M.W. did not report to BPD ***the more than $200,000 they seized from O.S.***

JA69-70 (emphasis added). Racketeering Act Eight cannot be fairly read as alleging anyone other than Stevenson ("O.S.") as being the actual (or targeted) victim of the robbery forming the basis of Racketeering Act Eight.

In addition, the jury's verdict form stated: "Racketeering Act Eight (March 22, 2016, **Oreese Stevenson**)." JA2687 (emphasis added). That, too, requires this Court's assessment of appellant's insufficient-evidence claim to decide whether a rational jury could have found beyond a reasonable doubt that there was a conspiracy to rob *Stevenson* (as opposed to Brown or Holloway – who were not alleged to be targets of the conspiracy to commit robbery in Count One).

Appellee alternatively argues that, assuming that this Court is limited to assessing whether there is sufficient evidence to support the jury's finding that *Stevenson* was the actual or intended victim, such evidence exists. Response Brief of Appellee, at 15-17. Appellee erroneously asserts that, under Maryland law, Stevenson "jointly" or "constructively" possessed Brown's money (or it was in his "care, custody, and control") when the officers decided to take it from Brown. *Id.* at 16-17. No Maryland caselaw holds that the owner/driver of a car constructively or jointly possesses – or  has "care, custody, or control" over – his passenger's property for purposes of Maryland's robbery statute.[5] Instead, as discussed in

---

[5] The sole Maryland case that appellee cites, *Johnson v. State*, 262 A.2d 792 (Md. App. 1970), addressed an entirely distinguishable situation – holding that a

appellant's opening brief, Maryland precedent supports appellant's contrary position. Opening Brief of Appellant, at 19-20.

Appellee's argument that this Court already decided this issue against appellant – citing *Taylor*, 942 F.3d at 217 – is wrong. That passage of this Court's opinion on direct appeal[6] was not made in response to the Maryland-law argument that appellant now makes (because appellant's direct appeal counsel did not make it). It thus is not "law of the case."

Appellee's related assertion – that this Court held that "the [drug] deal" between Stevenson was "already made" (thus giving Stevenson a legal interest in the money), Response Brief of Appellee, at 16 (selectively quoting from this Court's opinion) – is flatly contrary to Stevenson's testimony at trial and also to this Court's actual quotation of Stevenson's trial testimony. *Taylor*, 942 F.3d at 217 ("When explaining at trial why he believed that the bag contained $21,500, Stevenson testified, 'That was *the deal* [he was] ***going to*** *sell it for*.") (emphasis added).

---

"supervisor" of bank tellers was a robbery victim along with a specific teller from whom money was taken by the defendant because the supervisor possessed "care, custody, or control" over the money that the defendant took during the robbery. *Id.* at 795.

[6] *Taylor*, 942 F.2d at 217 ("Taking the evidence in the light most favorable to the government, we conclude that it was sufficient for the jury to infer that Taylor *robbed Stevenson and his passenger, Demetrius Brown*, when he took a portion of the cash seized from the van.") (emphasis added).

10

Stevenson unequivocally testified that, when the cash was taken by officers from Brown's bag, the "deal" had not yet been consummated and that Stevenson did not yet possess Brown's money.[7]   It is axiomatic that a seller does not possess any

---

[7] Stevenson testified on direct examination as follows:

> Q. Okay.  Was [Brown] going to buy the half a kilogram from you?
>
> A. ***Probably so***. . . .
>
> Q. Did you know – well, what were you going to sell him the half a kilogram for, how much money?
>
> A. It's like – what should have been in [Brown's] bag?
>
> Q. Yeah.
>
> A. ***Maybe*** like twenty-one; twenty-one, five. . . .  ***I don't know what he had.***

JA1258-59 (emphasis added).

> Similarly,  on cross-examination, Stevenson testified:
>
> Q. And so while you had the expectation that he was going to pay you a certain amount of money for the cocaine you were giving him, you didn't know what was in the bag; correct?
>
> A. No.
>
> Q. ***And you hadn't had a discussion yet that day [with Brown] in the car about what was going down; correct***?
>
> A. ***No***.

contractual right to or other legal interest in the potential purchase money possessed by a prospective buyer before the sale is consummated by a "meeting of the minds" about the essential terms of the proposed sale. *See Cochran v. Norkunas*, 919 A.2d 700, 713 (Md. 2007) (contract not formed until the parties have a "meeting of the minds" about the essential terms of the agreement). Therefore, the evidence at trial did not support the jury's finding of Racketeering Eight with respect to the traffic stop involving Stevenson and Brown.

Appellee also argues that the evidence of the officers' intentions and actions at Stevenson's home prove Racketeering Act Eight. Response Brief of Appellee, at 18-22. For the reasons stated in appellant's opening brief, that argument also fails. Opening Brief of Appellant, at 22-25. Stevenson – the sole robbery victim named in Racketeering Act Eight – was across town when the officers arrived at his house (and could not have been the actual or intended robbery victim). The same is true about Holloway, even assuming *arguendo* that she was named as a victim in the

---

Q. You anticipated at some point you were going to ***try to sell him the cocaine*** you had in the car, and ***hopefully*** he had the right amount of money; correct?

A. ***Correct***.

JA1271-72 (emphasis added).

indictment (she wasn't).  The officers could not have conspired to rob her because they made her leave the house before they took the money.  *See id.*

For these reasons, there was insufficient evidence of Racketeering Act Eight. Because "one of the two necessary [racketeering] acts [must] be voided," this Court must . . . revers[e]" appellant's conviction on Count One.  *Taylor*, 942 F.3d at 213.

### 2.  Count Two

Appellee contends that there is sufficient evidence of the charge in Count Two because (1) the three wire-fraud racketeering acts are distinct acts; (2) *attempted* robbery under Maryland law is an "act . . . involving . . . robbery" under 18 U.S.C. § 1961(1); and (3) there was sufficient evidence that appellant conspired to rob and actually did rob Stevenson.  Response Brief of Appellee, at 22-30.  Appellee's arguments lack merit.

Initially, appellee erroneously contends that appellant's argument in his opening brief – that this Court's treatment of the three acts of wire fraud as three distinct racketeering acts is not "law of the case" because appellant's prior counsel did not argue that the three constituted a single "racketeering act"[8] – is "procedurally defaulted" because it was not raised in the district court proceedings.  Response Brief of Appellee, at 23 n.3.  Appellant *did* make that argument in the court below. *See*

---

[8] Opening Brief of Appellant, at 27-28.

Dist. Ct. No. 876, at 13-14 ("[B]ecause the parties' briefs on direct appeal did not raise the issue of whether the multiple acts of wire fraud charged in Count Two can be treated as separate racketeering acts under the RICO statute (and, indeed, incorrectly assumed that they could be), the Fourth Circuit's decision is not 'law of the case' on that point.").[9]  Even if it were being raised for the first time on appeal, however, appellant's *argument* (that the law-of-the-case doctrine does not foreclose his insufficient-evidence claim) is not procedurally defaulted because the insufficient-evidence *claim* was clearly preserved in the court below.  *See Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992) ("Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."); *United States v. Green*, 996 F.3d 176, 184 (4th Cir. 2021) (citing *Yee*).

Appellee next argues that appellant's reliance on cases like *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000), is misplaced because "the corrupt officers in the BPD's GTTF unit presented a threat of continued criminal activity."  Response Brief of Appellee, at 24.  Like the district court did, appellee errs by blending the time-and-attendance fraud with the other criminal activity of the officers in assessing whether individual acts of wire fraud qualify as distinct

---

[9] Appellant has moved to supplement the record on appeal with that portion of the district court record.

racketeering acts.  The legal question is not whether the time-and-attendance fraud should not be considered *at all* along with the alleged robberies.  Instead, the question is whether the three closely-related acts of wire fraud qualify as three distinct "racketeering acts" or merely as one.  For the reasons set forth in appellant's opening brief, they qualify as a single act.  *See* Opening Brief of Appellant, at 26-29.[10]

Appellee next disputes appellant's argument that *attempted* robbery under Maryland categorically fails to qualify as an "act . . . involving . . . robbery" under 18 U.S.C. § 1961(1).  Response Brief of Appellee, at 27-30.  For the first time on appeal,[11] appellee initially contends that this argument is waived under Federal Rule of Criminal Procedure 12(b)(3) because it should have been raised in a pretrial motion rather than as an insufficient-evidence claim.  Response Brief of Appellee,

---

[10] Appellee fails to address appellant's argument that the wire-fraud acts found by the jury concerned only a few days of work and occurred *in a one-month period* – which hardly qualifies as a "special threat to social well-being" (as appellee claims, Response Brief of Appellee, at 24).

[11] Appellee did not make this Rule 12(b)(3) argument in the court below.  JA2909-10.  Appellee did make a *distinct* procedural bar argument – that appellant procedurally defaulted his insufficient-evidence claims because his prior counsel did not raise them on direct appeal (JA2896-98), yet appellant has explained above that the ineffective assistance provided by his direct appeal counsel excuses that procedural bar.

at 27-28.  Assuming *arguendo* that appellee is correct about Rule 12(b)(3),[12] it is too late for appellee to raise such a procedural bar when appellee had the opportunity to raise it in the district court but failed to do so.  *See United States v. Metzger*, 3 F.3d 756, 757-58 (4th Cir. 1993) (holding that "the government's failure to raise [a] waiver as a procedural bar" constitutes "a waiver of the waiver").

Appellee also errs by arguing that Maryland's offense of conspiracy to rob is an "act . . . involving . . . robbery" under § 1961(1).  Although appellee is correct that this Court in *United States v. Simmons*, 11 F.4th 239, 259 (4th Cir. 2021), briefly stated that a conspiracy to commit a predicate offense qualifies as an "act . . . involving" the predicate offense under § 1961(1),[13] Response Brief of Appellee, at 28, *Simmons* did not address appellant's separate argument that § 1961(1)'s use of the word "involving" requires the application of the "categorical approach" in assessing whether a particular state conspiracy offense that does not require an overt act qualifies as "an . . . act . . . involving" the predicate offense.  The Supreme Court's decision in *Scheidler v. Nat'l Org. for Women*, 537 U.S. 393 (2003), requires application of the categorical approach to the term "robbery" in § 1961(1).  *See*

---

[12] Appellee is incorrect in any event.  As explained *supra*, appellant's argument is properly raised as an insufficient-evidence issue.

[13] This Court in *Simmons* did not squarely address the issue as appellant raises it here.  *Simmons*, 11 F.4th at 259.

*Shular v. United States*, 589 U.S. 154, 163 (2020) ("Shular points out that the word 'involving' can accommodate a generic-offense approach. *Cf. Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 409 (2003) ('act or threat involving . . . extortion,' 18 U.S.C. § 1961(1), contemplates '"generic" extortion' (some internal quotation marks omitted).");[14] *United States v. Franklin*, 904 F.3d 793, 801 (9th Cir. 2018). In addition, § 1961(1)'s use of the word "involving" means that the predicate offense "necessarily [must] entail[]" the substantive offenses included in § 1961(1). *Shular*, 589 U.S. at 160-62; *Kawashima v. Holder*, 565 U.S. 478, 484 (2012) (discussing the meaning of "involve"); *see also United States v. Miles*, 75 F.4th 1213, 1222 (11th Cir. 2023) (holding that "'involving' restrictively . . . mean[s] 'necessarily entail[s]'").

Maryland's offense of conspiracy to commit robbery, which solely requires a mere agreement to commit a robbery and requires no conduct whatsoever, is not "generic" robbery under the categorical approach. *See United States v. Gattis*, 877 F.3d 150, 156 (4th Cir. 2017) (holding that "generic robbery is defined as the

---

[14] In *Shular*, the Court applied a different type of categorical approach to the predicate offense at issue in that case – "serious drug offense" in 18 U.S.C. § 924(e)(2)(A)(ii). *See Schular*, 589 U.S. at ("But we have no reason to think Congress intended th[e] [traditional categorical] approach for § 924(e)(2)(A)(ii)— which uses no deeply rooted offense name like 'extortion' . . . ."). Nevertheless, the Court in *Shular* described *Scheidler* as applying the traditional categorical approach to "deeply rooted offenses" – such as extortion (and robbery) – in § 1961(1).

misappropriation of property under circumstances involving [immediate] danger to the person") (citation and internal quotation marks omitted).  Furthermore, even assuming some state-law offenses of conspiracy to commit robbery qualify as an "act . . . involving . . . robbery" under 18 U.S.C. § 1961(1), such a conspiracy-offense-variation of "robbery" still must satisfy the categorical approach.  It would be illogical to apply to the categorical approach to *substantive* state "robbery" offenses but not apply the categorical offense to *inchoate* conspiracy-to-commit-robbery offenses.  To the extent that § 1961(1)'s language is ambiguous about how to treat state conspiracy offenses, this Court must apply the rule of lenity and resolve such doubt in appellant's favor.  *See McNally v. United States*, 483 U.S. 350, 359-360 (1987).

Finally, appellee repeats its untenable argument that there was sufficient evidence that appellant committed Racketeering Act Eight.  Response Brief of Appellee, at 30.  As appellant argued above, based on the manner that Racketeering Act Eight is charged in Count One, there is insufficient evidence. The same is equally true for Count Two – as it expressly incorporated the allegations in paragraphs 27-32 of Count One (JA84) and did not mention Brown or Holloway.  Significantly, both paragraphs 27-32 in Count One and paragraph 28 in Count Two are identically entitled "**March 22, 2016, Robbery/ Extortion of O.S**."  JA67-68, 99.

### 3. Count Three

Appellee initially argues that appellant has "waived" this claim because appellant's opening brief "fail[ed] to prove his premise" that the language of superseding indictment limits this Court's analysis to Stevenson as the alleged victim of the robbery of money taken "from [Stevenson's] safe" (JA69). Response Brief of Appellee, at 31. Appellee is wrong. Citing specific language of the superseding indictment, appellant's opening brief demonstrates why this Court's analysis should be limited to the superseding indictment's allegation that appellant is guilty of a Hobbs Act robbery related solely to *Stevenson* (and the money taken from *his safe*). Opening Brief of Appellant, at 33-34 (citing both the incorporated language of Count One (JA69) and the language of Count Three (JA113)).

Appellee's alternative argument on the merits also fails – (1) by focusing on Holloway (rather than Stevenson) as the victim of the robbery; and (2) by contending that, notwithstanding Holloway's *voluntarily* remaining outside Stevenson's house, she was a victim of a Hobbs Act robbery. *See* Opening Brief of Appellant, at 23-24, 36.

**REPLY ISSUE THREE: If this Court determines that there is sufficient evidence supporting any of appellant's convictions, the errors related to other convictions are not harmless.**

Appellee erroneously argues that, if this Court determines that there is insufficient evidence of even two of the three convictions but finds sufficient

evidence of even a single conviction, this Court should find the errors "harmless" under the concurrent-sentence doctrine.  Response Brief of Appellee, at 32 (citing *United States v. Charles*, 932 F.3d 153, 159-71 (4th Cir. 2019)).  This Court in *Charles* held that the doctrine does not apply to multiple *convictions* – only multiple *sentences*.  *Charles*, 932 F.3d at 160.

**REPLY ISSUE FOUR: The district court erred by failing to conduct an evidentiary hearing on appellant's ineffective-assistance claims.**

Appellee argues that this Court should reject appellant's argument that he is entitled to an evidentiary hearing under the defendant-friendly standard noted in appellant's opening brief (at page 41) because there supposedly is no genuine dispute as to any material facts.  *See* Response Brief of Appellee, at 36-37.  Appellee is incorrect.

Appellant's ineffective-assistance claim concerning his trial counsel's omissions raises genuine disputes about material facts related to whether his trial counsel acted "strategically."  Whether counsel acted "strategically" in particular act or omission is critical to the "deficient performance" prong of the ineffective-assistance standard set forth in *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984).  Because the district court denied appellant's ineffective-assistance claim without conducting an evidentiary hearing – and, instead, merely declared that trial

counsel's omissions were "strategic," *e.g.*, JA3032[15] & JA3046,[16] *without ever hearing from trial counsel* – there is no way to know why trial counsel actually omitted the lines of defense identified by appellant.  An evidentiary hearing is thus required.  *Hendricks v. Vasquez*, 974 F.2d 1099, 1110 (9th Cir. 1992) (remanding for an evidentiary hearing on an ineffective-assistance claim because "[t]he best way to determine the reason for counsel's actions would be to hold an evidentiary hearing and ask counsel").

In addition, as appellant pointed out in his opening brief, at an evidentiary hearing, his current counsel "[1] could question Hendrix and Ward (to demonstrate the effect of impeaching them with their pretrial statements and cross-examining them about the purported safe-opening 'reenactment' video-recording); and [2] call appellant's expert witness (Owens) and also question Rayam concerning the audio-recording."  Opening Brief of Appellant, at 59.  Further factual development of these issues potentially would provide important facts related to the "prejudice" prong of

---

[15] The district judge (who did not preside over the jury trial) stated that trial counsel's "decisions regarding what evidence to adduce and what lines of cross examination to pursue are almost always strategic."  JA3032.

[16] The court stated that appellant "has not painted a picture of deficient or incompetent counsel, but rather counsel faced with difficult strategic choices in a lengthy and complex trial" and that "his counsel acted within professional bounds in weighing the risks and rewards of various approaches."  JA3046.

the ineffective-assistance standard. *Strickland*, 466 U.S. at 694. Without such evidentiary development, a court cannot assess *Strickland* prejudice.

Appellee, echoing the district court, argues that an evidentiary hearing on these issues is not warranted because an evidentiary hearing on an ineffective-assistance claim is not for "'the purpose of'" a "'do-over'" of "'lines of examination [that] his [trial] counsel forwent.'" Response Brief of Appellee, at 36 (quoting the district court). Appellee and the district court are wrong. The very purpose of an evidentiary hearing when a defendant has raised a *prima facie* claim of ineffective-assistance claim is to flesh out the relevant facts and assess those facts in a "counterfactual" manner – i.e., is there a "reasonable probability" (which is less than a showing by a preponderance of the evidence) that the result of the trial would have been different if trial counsel had acted in the manner urged by the ineffective-assistance claim? *See United States v. Dominguez*, 998 F.3d 1094, 1120 (10th Cir. 2021) ("*Strickland*'s prejudice analysis involves a 'counterfactual' inquiry that hinges on counsel's alleged ineffective representation – that is, the inquiry turns on whether, but for such ineffective representation, there is a reasonable probability that the outcome of the proceeding would have been different."); *Lopez v. Greiner*, 323 F. Supp.2d 456, 478 (S.D.N.Y. 2004) (noting "the Court must determine whether the result of Lopez's criminal proceedings would have differed 'but for counsel's unprofessional errors,' *Strickland*, 466 U.S. at 694," which was deemed a

"counterfactual analysis"). Therefore, an evidentiary hearing indeed is for the purpose of a limited "do-over" – to the extent that such a "do-over" informs the *Strickland* "prejudice" analysis.

Therefore, the district court erred by refusing to conduct an evidentiary hearing on appellant's ineffective-assistance claim.

**REPLY ISSUE FIVE**: **The district court erred by failing to conduct an evidentiary hearing on appellant's perjury claim.**

Appellee, defending the district court's ruling, initially argues that this claim is procedurally defaulted. Response Brief of Appellee, at 50. Appellee disputes appellant's reliance on the Supreme Court's decision in *Bousley*, 523 U.S. at 622 – contending that *Bousley*'s discussion of the dehors-the-record exception to the procedural default rule is limited to claims that a defendant's guilty plea was "coerced." Response Brief of Appellee, at 50. Nothing in *Bousley* says that exception is limited to coerced-guilty-plea claims, and courts thus have applied the exception to a wide variety of different types of claims (including prosecutorial misconduct claims where the relevant facts were not part of the direct appeal record). *See, e.g.*, *CCA Recordings 2255 Litigation v. United States*, Case No. 19-cv-2491-JAR-JPO *et al.*, 2021 WL 150990, at *6 (D. Ka. Jan. 18, 2021) (applying the exception to a Sixth Amendment right-to-counsel claim); *Daniels v. United States*, 5:10-CR-327-2H, 2016 WL 3570623, at *1 (E.D.N.C. June 27, 2016) (applying the

exception to a claim of prosecutorial misconduct); *United States v. Sheneman*, Nos. 3:10-CR-120, 2015 WL 2250247, at *11 (N.D. Ind. May 12, 2015) (same); *United States v. Fell*, No. 2:01-cr-12, 2013 WL 1953322, at *3 (D. Vt. May 10, 2013) (applying the exception to a biased juror claim). Because essential evidence supporting appellant's perjury claim – including the FBI-302 reports of Ward and Hendrix's pretrial statements to the trial prosecutors – were not part of the direct appeal record, the district court erred by ruling that the perjury claim was procedurally defaulted.

Appellee next disputes appellant's assertion that this Court engages in *de novo* review of a perjury claim and, instead, contends that the proper standard of review is for abuse of discretion (without citing any precedent). Response Brief of Appellee, at 51 n.4. Although historical facts concerning a perjury claim found by a district court after an evidentiary hearing receive deferential review, the ultimate issue of whether perjury violated due process is reviewed *de novo*. *United States v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997); *see also Napue v. Illinois*, 360 U.S. 264, 271-72 (1959) (engaging in independent review of a perjury claim). Because the district court refused to conduct an evidentiary hearing, this Court must assume the truth of the facts alleged by appellant and decide, in a *de novo* manner, whether, if proved, such facts would constitute a due process violation. *See United States v. Witherspoon*, 231 F.3d 923, 927 (4th Cir. 2000) (unless the existing record

24

"conclusively" shows otherwise, facts alleged by a defendant in a § 2255 proceeding must be assumed to be true on appeal if the district court denied an evidentiary hearing).

Turning to the merits of the claim, appellee contends that the district court did not err by refusing to conduct an evidentiary hearing because appellant "did not raise a colorable claim of perjured testimony." Response Brief of Appellee, at 51. Appellee errs. *Looking at the evidence in a light most favorable to appellant*, as this Court must do,[17] the district court's ruling that appellant only pointed to "[m]inor inconsistencies" or "very slightly different accounts" between the trial testimony of Ward and Hendrix and their pretrial statements to the trial prosecutors (JA3049) is erroneous. It also reflects an uncritical attitude despite a substantial evolution in the two witnesses' versions of the truth given to the two trial prosecutors. The Supreme Court has recently underscored the importance of rectifying perjured testimony elicited by prosecutors. *See Glossip v. Oklahoma*, 145 S. Ct. 612 (2025).

As discussed in appellant's opening brief, Hendrix and Ward unequivocally testified at trial about a supposed "hoax" or "ruse" at Stevenson's house – whereby the officers, aware that a neighbor had been watching them, supposedly *pretended* that appellant had chased a person from Stevenson's house immediately after the

---

[17] *United States v. Hashimi*, 110 F.4th 621, 627 (4th Cir. 2024).

officer had arrived (so as to give the detectives a purported basis to enter the house without a search warrant). JA266-268, JA462-464, JA753-756, JA800-804. In his closing argument, one of the prosecutors told jurors that the officers had "create[d] a ruse to establish that someone was running from the house." JA2390. Appellant's supposed participation in the "ruse" was an important part of the prosecution's assertion that appellant was a knowing and willful participant in the RICO offenses and Hobbs Act robbery. It was important enough for prosecutors to elicit the testimony from both witnesses and then to remind jurors about it during closing arguments.

Viewed in a light most favorable to appellant, the trial testimony of Ward and Hendrix – underscored by the prosecutor's closing argument – *flatly contradicted* the witnesses' pretrial statements to the two trial prosecutors. Both witnesses unequivocally told both trial prosecutors before trial that appellant really did chase a young male from the back of Stevenson's house immediately after the officers arrived there. JA2835; JA2860. The trial testimony of Ward and Hendrix also contradicted the factual basis of the written plea agreement signed by former Detective Jenkins, *as well as by the two trial prosecutors*, just three weeks before appellant's trial began. JA2966 (Jenkins and the prosecutors stipulated that: "Following the arrest of O.S., [Jenkins], Taylor, Hendrix, and Ward entered O.S.'s

residence.  O.S. and K.H.'s son was at their residence when [Jenkins], Taylor, Hendrix and Ward arrived.").

As appellant stated in his opening brief (at pages 70-71), in assessing the materiality of the two men's perjury, this Court should consider appellant's evidence that former detective Rayam also lied under oath – about what he allegedly said to former detective Gondo about appellant's role in the alleged Summerville robbery (in their secretly-recorded conversation).  *Cf. Glossip*, 145 S. Ct. at 629 ("Although the prosecution's failure to correct [a prosecution witness'] false testimony was a material violation on its own, additional conduct by the prosecution further undermines confidence in the verdict.").  Rayam's testimony was in response to questions from one of the prosecutors, who offered the jury a written transcript of words (prepared by the government) that Rayam did not actually say (as demonstrated by appellant's expert's assessment of the recording).[18]

Appellant's trial counsel could have used both the perjury of Hendrix and Ward and the demonstrably false testimony by Rayam to challenge the *integrity* of the entire prosecution.  *Cf. Kyles v. Whitley*, 514 U.S. 419, 448 & 449 n.19 (1995) (holding that undisclosed evidence about police officers' interactions with an

---

[18] Because the district court refused to conduct an evidentiary hearing at which appellant's expert and Rayam could testify, this Court must assume the truth of the expert's report and view it in a light most favorable to appellant.

informant was relevant because it would have enabled the defendant at trial to have attacked the "ostensible integrity of the investigation" at trial – including evidence undermining the "process by which the police gathered evidence and assembled the case"); *see also id.* at 445 ("These developments would have fueled a withering cross-examination, destroying confidence in [a prosecution witness'] story and raising a substantial implication that the prosecutor had coached him to give it."). Such an attack on the integrity of the prosecution would have implicated three of the four key cooperating prosecution witnesses against appellant (Hendrix, Rayam, and Ward) and called into question all of the charges against appellant. Particularly in view of this case's present posture (before an evidentiary hearing has been conducted), appellee cannot show that the perjury of Ward and Hendrix is harmless *beyond a reasonable doubt* – particularly when considered along with Rayam's testimony and the transcript of the supposed conversation between Rayam and Gondo. *Glossip*, 145 S. Ct. at 627.

Viewing the existing record in a light most favorable to appellant and drawing all reasonable inferences in his favor, this Court should hold that appellant has offered enough evidence to entitle him to an evidentiary hearing on this claim.

## **CONCLUSION**

For the foregoing reasons and for the reasons in appellant's opening brief, this Court should reverse the district court's judgment denying § 2255 relief and remand with instructions to enter a judgment of acquittal. At the very least, this Court should vacate district court's judgment and remand with instructions to conduct an evidentiary hearing on appellant's ineffective-assistance-of-counsel and perjury claims.

Dated: May 7, 2025                 Respectfully submitted,


                                  */s/ Brent Evan Newton*
                                  Brent Evan Newton
                                  Attorney at Law
                                  19 Treworthy Road
                                  Gaithersburg, MD 20878
                                  (202) 975-9105
                                  brentevannewton@gmail.com

                                  **Attorney for Appellant**
                                  **Marcus Roosevelt Taylor**

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f), this reply brief contain 6,500 words.  This reply brief also complies with the typeface and type-style requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

<u>*/s/ Brent Evan Newton*</u>
Brent Evan Newton
Counsel for Appellant